CHARLES F. JOHNSON ET AL., APPELLEES, V. PAYNE INVESTMENT COMPANY, APPELLANT.

FILED MAY 17, 1913. No. 17,250.

1. **Brokers:** ACTION FOR COMMISSION: BURDEN OF PROOF. In an action on a contract between real estate brokers for a division of commissions on the sale of real estate, jointly listed by both parties, by which it was provided that, if sale is made by the second party without the aid of the first party, the second party shall have all of the commission, it being conceded that the sale on which the first party claims to be entitled to a division of the commission was in fact made by the second party, the burden is on the first party to show by a preponderance of the evidence that the sale was made by or with its aid or assistance.

2. ——: ——: EVIDENCE: SUFFICIENCY. Evidence examined, its substance set forth in the opinion, and *held* insufficient to require a division of the commission.

APPEAL from the district court for Scott's Bluff county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Wright & Duffie,* for appellant.

*Morrow & Morrow, contra.*

BARNES, J.

Action to recover commissions on the sale of certain lands, jointly listed for sale by the plaintiffs and the de-

fendant, as real estate brokers. By their petition plaintiffs claimed a commission of $2 an acre on the sale of 320 acres of land, for which the defendant had the exclusive agency. There was a written contract between the parties, which provided that the plaintiffs, in case they made the sale of any land listed jointly, and for which the defendant had the exclusive agency, should have a commission of $2 an acre. The contract also contained the further provision that, in case the plaintiffs should sell any land listed jointly with the defendant, and for which the defendant did not have the exclusive agency, the plaintiffs should have the entire commission if they made the sale without the aid or assistance of the defendant. The defendant, by its answer, admitted the execution of the contract, as alleged in the plaintiffs' petition; admitted the sale of the lands by the plaintiffs, as stated therein; and alleged, by way of a set-off or counterclaim, that plaintiffs and defendant had a certain tract of land consisting of about 100 acres listed for sale jointly, and on which the owner's price was $100 an acre; that it was agreed betwen plaintiffs and the defendant that the selling price thereof should be $110 an acre, and the excess over the owner's price was to be shared between them as a commission in case of a sale made by their joint efforts; that plaintiffs sold the said tract of land for $105 an acre, and kept all of the commission; that there was due from the plaintiffs to the defendant on account of the transaction the sum of $800; and prayed judgment for the balance due it, after deducting therefrom the amount of the plaintiffs' claim. The reply was a general denial. A trial in the district court for Scott's Bluff county resulted in a directed verdict and a judgment for the plaintiffs, and the defendant has appealed.

The theory on which the court directed the verdict was that the defendant's evidence did not show, or tend to show, that the defendant participated in the sale of the 100-acre tract of land, or in any way contributed to such sale. The defendant contends that the district court erred.

in directing the verdict, and insists that, under the evidence, the question of the defendant's right to recover should have been submitted to the jury. A determination of that question will dispose of all of the questions presented by the record.

It appears from the evidence that, under their contract, the plaintiffs and the defendant had listed for sale jointly the northwest quarter of section 10, township 22 north of range 56, which was sold to one George W. Andrus. The defendant admits that the plaintiffs made the sale, and by the terms of the contract defendant was not entitled to any part of the commissions, unless it or its subagents assisted in, or contributed to, the making of the sale. It appears from the evidence that a concern called the Deutch Land Company had a contract similar to the one between plaintiffs and defendant, which, however, did not include the quarter section of land above described. It also appears that the purchaser of the tract of land in question came to Scott's Bluff on or about the 17th day of June, 1909. When he arrived there he had some talk with the Deutch Land Company, and was shown several pieces of land which it had for sale. They also told him that the plaintiffs and the defendant had the land in question listed jointly, that they did not have the right to sell it, and that he had better see the plaintiffs. On the following day Andrus went to a Mr. Barber, who was his brother-in-law, to look at the lands in that vicinity; and, after looking over various tracts, they went to Mitchell, where the plaintiffs had their office, who took Andrus out to view the land, and afterwards sold it to him.

One Beach Coleman, who was associated with the Deutch Land Company, and who was called as a witness for the defendant, testified, in substance, that he first met Andrus in his office in Scott's Bluff; that his company was working at that time for the Payne Investment Company; that Andrus was looking for some irrigated land, and desired something rather choice. He said: "I suggested that I show him a piece of land or two. I told him at the

time that probably our lands were not quite such land as he had in mind. As a matter of fact I was trying to tie him to us as well as I could in the short time I was with him. I took him out north of town and showed him a piece of land. The land I showed him at that time was listed with us and with the Payne Investment Company. He did not go all the way out with me. When we got near the street east of Mr. Barber's place, he said he would get out there and go to Mr. Barber's place and stay all night. I saw him again the next morning in my office. I told him that the Payne Investment Company's train would be in the next day, and I invited him to get on that train and go up to the headgate, but he did not get in in time to do that. About the time the train came back he came into the office again. I said to him that they were ready to go out and look over the country, and that it would probably give him a good idea as to the country if he would get in and go along. I was careful that he should get into the car that Mr. Deutch was in. I did not go on that trip, but turned him over to Mr. Deutch. I next saw him that evening. He came into our office with Mr. Barber. I had been talking with him about a quarter section over there, which, I think, had 104 acres. A quarter section north of that, an 80, and a piece of land belonging to Thompson and Gilmore, which was the north-west quarter of section 10, township 22 north of range 56. We told him that, from his description of the land he wanted, this land would certainly please him. I explained to him that it was a piece of land which we did not have personally listed with the Payne Investment Company, but that Johnson & Whitman (plaintiffs) at Mitchell had the piece of land listed with the Payne investment people, and that he would have to buy it there. He then left our office, and gave us the impression that he was going to look at this piece of land with Mr. Barber. I understood he made arrangements to buy it that same day." He further testified: "I do not remember of having had any further conversation with Mr. Andrus after Mr. Barber

took him out to look at the land. I told Mr. Andrus that Johnson & Whitman had this land for sale. I knew this, because I tried to get it on our list, and the Payne people told us they had it. I directed Mr. Andrus to Johnson & Whitman because we were interested in the sale. I did not have the right to sell this land, as we did not have it listed. The Payne Investment Company and Johnson had that together. All subagents of the Payne Investment Company tried to furnish buyers for all lands so listed, no matter by what subagent it was listed; that was what we were trying to do. The reason we directed this party to Johnson & Whitman was because if we directed him to the Payne Investment Company, or whoever had this land listed, we would jointly get the commissions. Mr. Barber was present when we directed Mr. Andrus to Johnson & Whitman, and heard part of the conversation. I told him to make it plain to Johnson & Whitman, that we sent him to them, and he said he would do it. I think the first conversation I had with Johnson & Whitman was by telephone, the evening after the sale was consummated. I did not demand any of the commission from the Deutch Land Company, because I did not think they were in a position to pay it. I think Mr. Whitman stated in that conversation that he did not know anything about our having had a talk with Mr. Andrus. I think Johnson told me the same thing. They stated they had no knowledge that we ever had anything to do with this deal. I did not say anything about the Payne Investment Company's commission. I was not looking after their commission. I did not close the contract for the sale of this land for two reasons: In the first place, at that time, Andrus had not decided to buy; in the second place, we had not the land listed with us and the Payne Investment Company, so we had to send him to them and take a smaller commission."

Theodore D. Deutch was called as a witness for the defendant, and testified, in substance, that he was a partner in the firm of the Deutch Land Company. "I met Mr. Andrus in the town of Scott's Bluff, I think it was about the

15th of June. After we got through showing him the Tri-State land, we told him we would be glad to show him any-thing we had on the list. The next morning Mr. Barber and Mr. Andrus came into our office. We had nothing to do with bringing Mr. Andrus into the country. I told him this land was for sale by Johnson & Whitman on the joint list. I have not seen Mr. Andrus since he left the country. I saw him the next morning after the sale, and had a conversation with him after he bought the land. I do not know whether Mr. Barber or Mr. Andrus told Johnson & Whitman that we had pointed out this land to him. I do not know anything about what they said to him, because I was not with them. Mr. Andrus called at our office, and asked for a map so they could designate the places for sale. We marked all the land we had jointly listed, and that we had the right to sell. We ex-cluded the list of Johnson & Whitman and the Payne In-vestment Company."

We have not attempted to give the testimony in detail. For want of space we have only given the substance of it. At the close of the evidence the plaintiffs moved to strike out this testimony, for the reason that it was not shown that Johnson & Whitman had any knowledge whatever of the alleged transactions, nor is it shown that the alleged transactions were in any sense the moving cause of the sale to Andrus. The motion was sustained, and, as above stated, the verdict was directed.

Paragraph 5 of the written contract between the plain-tiffs and the defendant provided: "In case the land is sold by either of the parties hereto, the commissions or profits shall be divided as above, except where second party makes sale without aid of first party, in which case second party shall have all the commission." In the con-tract the plaintiffs were designated as the second party, and it seems clear that, in order to recover anything on the counterclaim or set-off, the burden of proof was on the defendant to show that it contributed to or aided in procuring the sale of the land in question to Andrus. As

45

we view the testimony, the defendant failed to make such proof, and therefore the district court did not err in directing a verdict for the plaintiffs.

The judgment of the district court is

AFFIRMED.

REESE, C. J., FAWCETT and SEDGWICK, JJ., concur.

LETTON, ROSE and HAMER, JJ., not sitting.